UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J.,[1]

        Plaintiff,

   v.                                                                    1:20-CV-699-LJV
                                                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

On November 14, 2016, the plaintiff, Douglas J. ("Douglas"), brought this action

under the Social Security Act ("the Act").  He seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket

Item 1.  On January 8, 2021, Douglas moved for judgment on the pleadings, Docket

Item 10; on March 9, 2021, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 11; and on April 19, 2021, Douglas replied,

Docket Item 15.

For the reasons stated below, this Court denies Douglas's motion and grants the

Commissioner's cross-motion.[2]

_____

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18,
2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history,
and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts
necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.      ALLEGATIONS

Douglas argues that the ALJ erred in four ways. Docket Item 10-1. First, he argues that the ALJ erred in assigning "little weight" to the opinion of social worker

Rachel Gill[3] based on an incomplete medical record.  *Id.* at 19-21.  Second, he argues

that the ALJ erred in his consideration of opinion evidence under the "special technique

for assessing mental impairments."  *Id.* at 21-26.  Third, he argues that the ALJ failed to

consider how stress affected his work-related abilities.  *Id.* at 26-27.  Finally, he argues

that the ALJ erred in assigning "significant weight" to the opinion of a "lay social security

analyst," K. Jost, S.D.M.  *Id.* at 27-28.

This Court disagrees with each of those arguments and therefore affirms the

Commissioner's finding of no disability.

## II.    ANALYSIS

### A.  Rachel Gill, LCSW

When determining a plaintiff's residual function capacity ("RFC"),[4] the ALJ must

evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  "[O]nly 'acceptable

medical sources' can be considered treating sources . . . whose medical opinions may

be entitled to controlling weight.  'Acceptable medical sources' are further defined (by

regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified

speech-language pathologists."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008)

(citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

---

[3] There are multiple reports in the record signed by "Rachel Schledebeck" which, according to Douglas's motion, is Gill's maiden name.  *See* Docket Item 10-1 at 20.

[4] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

Thus, while the ALJ may consider the opinions of "other sources"—including social workers—there is no obligation to assign weight or defer to these sources. *Id.*

Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, the consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an other source. *See* 20 C.F.R. § 416.927(c)(4). Other factors include the length and nature of the relationship between the opinion source and the claimant, whether evidence supports the opinion, whether the source of the opinion has a relevant specialization, and other factors the claimant brings to the Commissioner's attention. *Id.* at § 416.927(c)(1)-(6).

Here, the ALJ addressed Gill's "other source" opinion in some detail and appropriately explained the reasons for the weight assigned to it. He began by acknowledging Gill's diagnoses of major depressive disorder and post-traumatic stress disorder ("PTSD") and finding them to be "consistent with the medical record." Docket Item 9 at 29. But he then found Gill's conclusion that Douglas had "no useful ability to function in nearly all noted areas of mental functioning" to be "an overstatement of [Douglas's] limitations and . . . completely inconsistent with treatment records . . . show[ing] essentially normal findings on mental status exams except for anxious mood and affect and irritability on a few occasions." *Id.* at 29 (citing *id.* at 348, 380, 486, 563, 553-554). The ALJ also discounted Gill's findings under the global assessment of

functioning—suggesting "delusional or hallucinatory behavior and serious impairment in communication or judgment" as well as "an inability to function in almost all areas (e.g.[,] stays in bed all day, no job, home[,] or friends)"—as inconsistent with both the medical records and the medical opinions that the ALJ credited.  *Id.*

And the ALJ accurately observed that Gill's opinion also was inconsistent with Douglas's "admitted activities of daily living."  *Id.*  For example, the ALJ noted that Gill's opinion that Douglas could not use public transportation was directly contradicted by his own statements that he in fact uses public transportation and that he "used public transportation to travel a distance of 20 miles to attend a consultative psychological examination."  *Id.*  So the ALJ indeed explained the weight he gave to Gill's "other source" opinion well enough for a reviewer to follow his reasoning, *see* SSR 06-03P at *6, and he appropriately gave Gill's opinion "little weight," *see* Docket Item 9 at 29.

What is more, the ALJ also appropriately explained the weight given to other opinions from "acceptable medical sources."  An ALJ must consider several factors when deciding the weight to give a medical opinion, including the extent and nature of the treatment relationship, the length of the treatment relationship, whether the medical opinion is supported by medical signs and laboratory findings, the opinion's consistency with the record as a whole, the opinion source's specialization, and other factors the claimant brings to the ALJ's attention.  20 C.F.R. § 416.927(c)(1)-(6).  Here, the ALJ did exactly that.

For example, the ALJ gave "significant weight" to the opinion of "state-agency reviewing psychiatrist" H. Tzetzo, M.D., and "great weight" to the opinion of "consultative examining psychologist" Janine Ippolito, Psy.D., finding their opinions to be "consistent

with treatment records from Horizon."  Docket Item 9 at 28, 29.  He acknowledged both Dr. Tzetzo's and Dr. Ippolito's respective specialties, as well as their roles as consultants.[5]  *Id.*  The ALJ ultimately agreed with Dr. Tzetzo's opinion that Douglas has no more than "moderate" mental limitations, *id.* at 28 (citing *id.* at 74-75), as well as Dr. Ippolito's opinion that Douglas's mental limitations are "not significant enough to interfere with his ability to function on a daily basis," *id.* at 29 (citing *id.* at 474).  And discounting Gill's "other-source" opinion in favor of the opinions of Dr. Tzetzo and Dr. Ippolito, both "acceptable medical sources," was not error.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free to . . . choose between properly submitted medical opinions." (citation and original alterations omitted)).

Douglas argues that the records cited by the ALJ in discounting Gill's opinion were incomplete primarily because the "bulk of Ms. Gill's psychotherapy records,"[6] Docket Item 10-1 at 19-20, were missing.  He contends that this "created a gap that the ALJ had a duty to fill."  *Id.* at 21.  This Court disagrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human*

---

[5] The ALJ noted that Dr. Ippolito had the opportunity to examine Douglas before completing her report*, id.* at 29, but that Dr. Tzetzo based his opinion on a review of the medical record*, id.* at 28.

[6] Douglas makes a passing reference to "other mental health treatment records from Horizon."  Docket Item 10-1 at 21.  This reference is too general to be useful, much less persuasive, to this Court in considering his argument for developing the record. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) ("[The claimant] identifies no specific record that was missing, much less explains how it would have affected her case.  We therefore find no error in the ALJ's development of the record.").

*Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d

Cir. 1996); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, prior to rendering

any eligibility determination, "make every reasonable effort to obtain from the

individual's treating physician (or other treating health care provider) all medical

evidence, including diagnostic tests, necessary in order to properly make such

determination").  Thus, "where there are deficiencies in the record, an ALJ is under an

affirmative obligation to develop a claimant's medical history 'even when the claimant is

represented by counsel or . . . by a paralegal.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d

Cir. 1999) (quoting *Perez*, 77 F.3d at 47); *see also Cruz*, 912 F.2d at 11 ("[W]hen the

claimant is unrepresented, the ALJ is under a heightened duty 'to scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts.'" (quoting

*Echevarria*, 685 F.2d at 755)).  But "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical

history,' the ALJ is under no obligation to seek additional information in advance of

rejecting a benefits claim."  *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

     Here, Douglas does not proffer what the missing records say, let alone explain

how they "would have altered the outcome of h[is] proceeding."  *Heather C. v. Berryhill*,

2019 WL 1432593, at *3 (N.D.N.Y. Mar. 29, 2019) (declining to remand where treatment

notes may have been missing from the record but plaintiff failed to provide any insight

into their probative value) (citing *Reices-Colon*, 523 F. App'x at 799).  Moreover, and as

noted above, the ALJ discounted Gill's opinion largely because it was inconsistent with

the opinions of Drs. Tzetzo and Ippolito.  So it is hard to fathom how the additional

records might have changed that.  For both those reasons, there is no basis upon which

to revisit the ALJ's decision.[7]  *See Lynch v. Astrue*, 2008 WL 3413899, at *5 (W.D.N.Y. Aug. 8, 2008) ("Accordingly, the ALJ's failure to refer to [the State agency review psychologist's] reports is, at best, harmless error, since consideration of the information contained in the reports would not have changed the outcome of the hearing determination."); *see, e.g., Seltzer v. Comm'r of Soc. Sec.*, 2007 WL 4561120, at *10 (E.D.N.Y. December 18, 2007) (ALJ's failure "to affirmatively develop the record and/or consider all of the relevant evidence" does not require remand if the court otherwise finds the error to be harmless); *Walzer v. Chater*, 1995 WL 791963, at *9 (S.D.N.Y. Sept.26, 1995) (ALJ's failure to consider treating physician's report was harmless error where report's findings would have no effect on ALJ's ultimate conclusion).

### B.  The "special technique"

The regulations "require application of a 'special technique' at the second and third steps of the five-step framework" to evaluate the severity of a claimant's mental impairments.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir.2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir.2007)).  After determining that the claimant suffers from a medically determinable impairment, the ALJ must determine the degree of functional limitation resulting from the impairment under the four broad functional areas of the "paragraph B" criteria.  20 C.F.R. § 416.920a(c)(3).  Those areas include:

---

[7] What is more, Douglas was represented by counsel at the hearing, and the ALJ gave counsel the opportunity to submit additional material and even held the record open so that counsel could submit a medical source statement and other records.  *See* Docket Item 9 at 40.  So the ALJ met his obligation, and that is especially so because the "regulations . . . explicitly require the claimant to furnish all relevant medical evidence."  *See Firpo v. Chater,* 100 F.3d 943, 1996 WL 49258, at *2 (2d Cir. 1996) (unpublished) (citing 20 C.F.R. § 404.1512(a),(c)).

"Understand[ing], remember[ing], or apply[ing] information; interact[ing] with others; concentrat[ing], persist[ing], or maintain[ing] pace; and adapt[ing] or manag[ing] oneself."  *Id.*  "It is mandatory that the ALJ's written decision reflect application of the [special] technique; the decision must include a specific finding as to the degree of limitation in each of the functional areas."  *Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016) (quoting *Kohler*, 546 F.3d at 266) (internal quotations omitted).

Here, the ALJ did what the regulations require.  He found that Douglas has "a mild limitation" in "understanding, remembering, or applying information"; a "moderate limitation" in "interacting with others"; a "moderate limitation" in "concentrating, persisting, or maintaining pace"; and a "mild limitation" in "adapting or managing oneself."  Docket Item 9 at 21-22.   He detailed his reasons for those conclusions and cited medical records as well as Dr. Ippolito's opinion to support them.  *Id.*  In other words, the ALJ did exactly what he was supposed to do in assessing the "paragraph B" criteria.

Douglas argues that "[t]he ALJ erred by failing to even mention [l]isting § [sic] 12.15 in his step 3 analysis."  Docket Item 10-1 at 22 n.3.  But as Douglas concedes, the paragraph B and C criteria for both listing 12.04, which the ALJ explicitly addressed, and listing 12.15, which he did not, are the same.  *Id.* at 21.  So if failing to explicitly address listing 12.15 was error, that error was harmless.

Douglas also argues that the ALJ erred in failing to address Gill's opinion in his "special technique" analysis and in failing to fill the gap created by the missing records.  But as noted above, the ALJ addressed Gill's opinion in great detail at step 4 and discounted it in favor of the opinions of Drs. Tzetzo and Ippolito.  So to the extent that

failing to explicitly address Gill's opinion at step three may have been error, that error was harmless as well.

Finally, Douglas argues that the ALJ erred in his "cursory evaluation of . . . the [paragraph] C criteria[8] for listed mental impairments." *Id.* at 24.  And as Douglas correctly notes, the ALJ said only that he "considered whether the 'paragraph C' criteria are satisfied" and that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.* (citing Docket Item 9 at 22).  But the paragraph C criteria require a disorder that is both serious and persistent, and the ALJ did not err in crediting Dr. Tzetzo's opinion that Douglas's limitations were no more than moderate, *see* Docket Item 9 at 28, and Dr. Ippolito's opinion that Douglas's "psychological problems" do not "interfere with his ability to function on a daily basis," *id.* at 29.  Although the ALJ could have addressed the paragraph C criteria in more detail, his failure to do so was not error, let alone error that made a difference in his conclusion.

In essence, Douglas's objections at steps two and three boil down to disagreeing with the ALJ's analysis and with his crediting Dr. Tzetzo's and Dr. Ippolito's opinions at the expense of Gill's.  But that is not a reason to question the ALJ's decision, especially when Douglas himself testified that only physical issues—not the mental issues about which Gill opined—prevented him "from going out and finding a job." *See id.* at 42, 55-56.  Because the ALJ carefully considered all the medical and opinion evidence and thoroughly explained his analysis in a way that this Court can follow and understand,

---

[8] Listing 12.04 and 12.15 are satisfied by meeting the requirements under paragraphs A and B, or A and C.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2, § 12.04, 12.15.  The ALJ addressed only the paragraph B and C criteria and apparently found that Douglas met the paragraph A criteria.  *See* Docket Item 9 at 21-22.

and because his conclusions are supported by substantial evidence, this Court cannot disturb them.

### C.  Impact of stress on work ability

Douglas argues that the ALJ erred by "purport[ing] to give great weight" to Dr. Ippolito's opinion, "including her finding [that Douglas] had moderate limitations in his ability to appropriately deal with stress," without including a limitation for stress in his RFC.  *See* Docket Item 10-1 at 27.  Again, this Court disagrees.

The ALJ explicitly addressed—no less than three times, Docket Item 9 at 22, 27, 29—Dr. Ippolito's opinion that Douglas could "appropriately deal with stress with moderate limitations."  *See id.* at 474 (Dr. Ippolito's opinion).   But the ALJ also accurately noted Dr. Ippolito's conclusion that none of Douglas's mental limitations "interfere[d] with [his] ability to function on a daily basis."  *Id.*  What is more, the ALJ accounted for Douglas's only testimony about stress—being stressed in "a crowd of people," *see id.* at 54—by limiting him to only "occasional interaction with the public," *id.* at 22.

Douglas's passing reference to other evidence in the record demonstrating that he is "significantly limited in his ability to deal with stress," *see* Docket Item 10-1 at 27, n. 6 (citing Docket Item 9 at 348, 358, 375, 640), is similarly unconvincing.  None of the records he cites support a greater limitation for dealing with stress than that found by Dr. Ippolito, let alone a significant limitation.  And the ALJ either explicitly evaluated

those records[9] or considered other evidence with similar findings.[10]

So this is not a case like *Terry M. v. Comm'r of Soc. Sec.*, 2021 WL 1578291 (W.D.N.Y. Apr. 22, 2021), where a psychologist whose opinion was given "great weight" found that the plaintiff was "moderately to markedly limited in appropriately dealing with stress" and "the ALJ never even mentioned the nature of [the plaintiff's] stress or how it affected her ability to function." *Id.* at *2. Here, in contrast, the ALJ acknowledged Douglas's stress, noted the opinion of a psychologist that it did not affect his ability to function, but nevertheless incorporated a stress-related limitation in the RFC addressing Douglas's testimony about what stressed him.

The ALJ therefore adequately addressed stress and incorporated a limitation addressing it in the RFC.

### D. Opinion of lay source

In cursory fashion, Douglas argues that the ALJ erred in affording "significant weight" to the opinion of a social security analyst who "was not a medical source." Docket Item 10-1 at 27. But the only case Douglas cites in support of his argument is far different than this one. In *Kociuba v. Comm'r of Soc. Sec.*, 2017 WL 2210511

---

[9] *Compare id.* at 358 (Horizon mental health assessment including Douglas's report that he considers his "physical health" problems to be a "major stressor"), *with id.* at 26 (ALJ's explicitly referring to findings in the same assessment)*; compare id.* at 640 (Gill's opinion that Douglas has "no useful ability to function" in "deal[ing] with normal work stress"), *with id.* at 29 (ALJ's discounting this finding as "an overstatement of the claimant's limitations" and "inconsistent with treatment records.").

[10] *Compare id.* at 348 (Douglas's reporting suffering from "added stress" due to fighting with his daughter's mother regarding visitation and the loss of "[five] relatives this yer [sic]"), *with id.* at 26 (ALJ's citing Douglas's reports that "the mother of his daughter was fighting with him" and that "he had lost three of his relatives in the last year").

(N.D.N.Y. May 19, 2017), the court found that there was "no opinion evidence that clearly support[ed] the ALJ's conclusions in the RFC assessment" and that the ALJ therefore may have relied solely on the opinion of the social security analyst in determining the plaintiff's RFC. *See id.* at *7-8. Here, on the other hand, the ALJ based his evaluation on the records and opinions of medical providers and did not rely exclusively—or even primarily—on the opinion of someone other than a medical source.

Moreover, the analyst's opinion at issue here addressed Douglas's physical limitations, not the mental issues that Douglas now raises. *See* Docket Item 9 at 28 (the ALJ's decision citing Jost's conclusion that "claimant could perform light exertional activity with the need to avoid respiratory and environmental hazards"), 72-73 (physical RFC assessment by K. Jost, S.D.M.). So even if the ALJ erred in assigning "significant weight" to the lay opinion of a social security analyst as Douglas now argues, that error was of no moment.

## **CONCLUSION**

Although this Court has sympathy for Douglas and the hardships that must stem from his impairments, the ALJ's decision neither was contrary to the substantial evidence in the record nor did it result from any legal error. Therefore, and for the reasons stated above, Douglas's motion for judgment on the pleadings, Docket Item 10, is DENIED; the Commissioner's cross motion for judgment on the pleadings, Docket Item 11, is GRANTED; the complaint is DISMISSED; and the Clerk of Court shall close the file.

SO ORDERED.

Dated:      March 31, 2022
            Buffalo, New York


                                        _/s/ Lawrence J. Vilardo_____
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE